IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 23, 2005

### IN RE M.W.M., W.W.M., S.M.M., & A.M.M.

**Appeal from the Chancery Court for Lawrence County**
**No. 11033-02     Jim T. Hamilton, Judge**

---

**No. M2005-00053-COA-R3-PT - Filed August 1, 2005**

---

This appeal involves an imprisoned mother's efforts to retain her parental rights with regard to four of her eight children. The Tennessee Department of Children's Services filed a petition in the Chancery Court for Lawrence County seeking to terminate the mother's parental rights with regard to four of her children residing in Tennessee. Following a bench trial, the court terminated the mother's parental rights to the three older children based on abandonment under Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(iv) (Supp. 2004) and terminated her rights to the youngest child based on Tenn. Code Ann. § 36-1-113(g)(6). On this appeal, the mother asserts that the evidence does not support the trial court's conclusions that she abandoned the three older children and that the interests of all four children would be best served by terminating her parental rights. We have determined that the record contains clear and convincing evidence that the mother abandoned the three older children and that terminating the mother's parental rights is in the best interests of all four of the children involved in this case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J., joined. WILLIAM B. CAIN, J., filed a concurring opinion.

Stanley K. Pierchoski, Lawrenceburg, Tennessee, for the appellant, R.M.

Paul G. Summers, Attorney General and Reporter, and Juan G. Villaseñor, Assistant Attorney General, for the appellee, State of Tennessee Department of Children's Services.

### OPINION

### I.

W.M. was serving in the United States Navy when he began dating R.M. R.M. was a native of Venezuela who, by the time she met W.M., had already been married twice and had given birth to four children. Two of these children were still living with R.M., and after W.M. and R.M. married, they eventually had four children of their own.

R.M. proved to be an abusive parent who routinely beat and belittled her children. While living in Florida, she temporarily lost custody of the two older children because she beat them with a clothes hanger and even broke one child's leg. After the children were returned to her custody, R.M. and W.M. moved to Alabama where, both in 1993 and 1995, her conduct forced the State to remove all six children from her custody because of abuse and neglect. R.M. and W.M. moved to Colorado with the children where, in 1997, all six children were again removed from the couple's custody after it was discovered that R.M. had again beaten one of her daughters with a clothes hanger.[1] The Colorado authorities eventually returned five of the six children to the couple's custody. The child who had been beaten with the clothes hanger remained in state custody and was eventually placed with one of W.M.'s relatives living in Tennessee.

R.M. was employed as a caretaker for an elderly couple while the family was living in Colorado. She was arrested in March 1998 after the couple discovered that she had stolen over $76,000 from them. As soon as she was released on bond, R.M. fled to Venezuela taking the five children in her custody with her. W.M. remained in the United States and at some point moved to Tennessee.

R.M. started out living with her family in Venezuela. However, when her family discovered that R.M. was evading criminal prosecution in the United States, they threatened to turn her over to the Venezuelan authorities. R.M. and the children then moved into a rented house. R.M. left the children alone in the house for two weeks while she traveled to Caracas. During that time, the children were left to fend for themselves without food or adult supervision.

R.M. eventually decided to leave Venezuela because her relatives continued threatening to turn her over to the authorities. She and the five children traveled to Vermont where she was arrested in June 1998. When R.M. was extradited to Colorado, the five children were sent to live with W.M. in Tennessee. After her return to Colorado, R.M. pled guilty to theft from the elderly couple and was sentenced to serve twelve years in the Colorado prison system.

As it turned out, the children's lives with W.M. were no better than they had been with R.M. In July 2000, the Tennessee Department of Children's Services filed a petition in the Lawrence County Juvenile Court seeking temporary custody of the children because W.M. had beaten them with a wooden drumstick. W.M. was arrested and incarcerated in Lawrence County. The juvenile court declared the children to be dependent and neglected and directed the Department to place them in foster care. In November 2000, the court approved placing the two older children,[2] over R.M.'s objections, with two of W.M.'s relatives who lived in Lawrenceburg. The three remaining children were placed in foster care.

---

[1]This child was one of R.M.'s and W.M.'s daughters.

[2]W.M. is not the biological father of these children. Their biological father was R.M.'s second husband who is deceased.

In August 2002, the Department filed a petition in the Chancery Court for Lawrence County to terminate both W.M.'s and R.M.'s parental rights with regard to their four children.[3] W.M. never responded to the petition, and the court terminated his parental rights by default in March 2003. R.M., however, contested the termination of her parental rights. Following hearings in September and November 2004, the trial court filed an order on December 9, 2004 terminating her parental rights on the ground of abandonment under Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(iv). The court terminated R.M.'s parental rights with regard to the youngest child based on Tenn. Code Ann. § 36-1-113(g)(6).[4] The trial court also concluded that the interests of all four children would be best served by terminating R.M.'s parental rights.

## II.
### THE STANDARDS FOR REVIEWING TERMINATION ORDERS

A biological parent's right[5] to the care and custody of his or her child is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions.[6] *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2059-60 (2000); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993); *Ray v. Ray*, 83 S.W.3d 726, 731 (Tenn. Ct. App. 2001). While this right is fundamental and superior to the claims of other persons and the government, it is not absolute. *State v. C.H.K.*, 154 S.W.3d 586, 589 (Tenn. Ct. App. 2004). It continues without interruption only as long as a parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination. *Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002); *In re S.M.*, 149 S.W.3d 632, 638 (Tenn. Ct. App. 2004); *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004).

Termination proceedings in Tennessee are governed by statute. Parties who have standing to seek the termination of a biological parent's parental rights must prove two things. First, they

---

[3]This proceeding did not involve the two children from R.M.'s second marriage. These children had already been placed with W.M.'s relatives. This record does not indicate that the Department undertook to terminate R.M.'s parental rights with regard to these children; however, both of them had reached the age of majority by the time of the trial in this case.

[4]Tenn. Code Ann. § 36-1-113(g)(6) permits the termination of a parent's parental rights when "[t]he parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court."

[5]This right exists notwithstanding the marital status of the child's biological parents where a biological parent has established or is attempting to establish a relationship with the child. *Lehr v. Robertson*, 463 U.S. 248, 262, 103 S. Ct. 2985, 2993-94 (1983); *In re D.A.H.*, 142 S.W.3d 267, 274 (Tenn. 2004); *Jones v. Garrett*, 92 S.W.3d 835, 840 (Tenn. 2002); *In re Swanson*, 2 S.W.3d 180, 188 n.12 (Tenn. 1999). The right also extends to adoptive parents. *Simmons v. Simmons*, 900 S.W.2d 682, 684 (Tenn. 1995).

[6]U.S. Const. amend. XIV, § 1; Tenn. Const. art. I, § 8.

must prove the existence of at least one of the statutory grounds for termination.[7] Tenn. Code Ann. § 36-1-113(c)(1); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *Jones v. Garrett*, 92 S.W.3d at 838. Second, they must prove that terminating the parent's parental rights is in the child's best interests.[8] Tenn. Code Ann. § 36-1-113(c)(2); *In re A.W.*, 114 S.W.3d 541, 545 (Tenn. Ct. App. 2003); *In re C.W.W.*, 37 S.W.3d 467, 475-76 (Tenn. Ct. App. 2000); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

No civil action carries with it graver consequences than a petition to sever family ties irretrievably and forever. Tenn. Code Ann. § 36-1-113(i)(1); *M.L.B. v. S.L.J.*, 519 U.S. 102, 119, 117 S. Ct. 555, 565 (1996); *In re Knott*, 138 Tenn. 349, 355, 197 S.W. 1097, 1098 (1917); *In re D.D.K.*, No. M2003-01016-COA-R3-PT, 2003 WL 23093929, at *8 (Tenn. Ct. App. Dec. 30, 2003) (No Tenn. R. App. P. 11 application filed). Because the stakes are so profoundly high, Tenn. Code Ann. § 36-1-113(c)(1) requires persons seeking to terminate a biological parent's parental rights to prove the statutory grounds for termination by clear and convincing evidence. This heightened burden of proof minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d at 622. Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable, *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003) (No Tenn. R. App. P. 11 application filed), and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002); *In re S.M.*, 149 S.W.3d at 639; *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d at 733; *In re C.W.W.*, 37 S.W.3d at 474.

Because of the gravity of their consequences, proceedings to terminate parental rights require individualized decision making. *In re Swanson*, 2 S.W.3d at 188. Accordingly, Tenn. Code Ann. § 36-1-113(k) explicitly requires courts terminating parental rights to "enter written orders containing specific findings of fact and conclusions of law" whether they have been requested to do so or not. *In re S.M.*, 149 S.W.3d at 639; *In re M.J.B.*, 140 S.W.3d at 653-54. These specific findings of fact and conclusions of law facilitate appellate review and promote just and speedy resolution of appeals. When a lower court has failed to comply with Tenn. Code Ann. § 36-1-113(k), the appellate courts must remand the case with directions to prepare the required findings of fact and conclusions of law. *In re D.L.B.*, 118 S.W.3d at 367; *In re K.N.R.*, No. M2003-01301-COA-R3-PT, 2003 WL 22999427, at *5 (Tenn. Ct. App. Dec. 23, 2003) (No Tenn. R. App. P. 11 application filed).

---

[7] The statutory grounds for terminating parental rights are found in Tenn. Code Ann. § 36-1-113(g) (Supp. 2004).

[8] The factors to be considered in a "best interests" analysis are found in Tenn. Code Ann. § 36-1-113(i).

The heightened burden of proof mandated by Tenn. Code Ann. § 36-1-113(c)(1) requires us to adapt Tenn. R. App. P. 13(d)'s customary standard of review for cases of this sort. First, we must review the trial court's specific findings of fact de novo in accordance with Tenn. R. App. P. 13(d). Thus, each of the trial court's specific factual findings will be presumed to be correct unless the evidence preponderates otherwise. Second, we must determine whether the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements required to terminate a biological parent's parental rights. *Jones v. Garrett*, 92 S.W.3d at 838; *In re Valentine*, 79 S.W.3d at 548-49; *In re S.M.*, 149 S.W.3d at 640; *In re M.J.B.*, 140 S.W.3d at 654.[9]

## III.
### THE ADEQUACY OF THE DEPARTMENT'S EVIDENCE

R.M. concedes that the Department presented sufficient evidence to support terminating her parental rights with regard to her youngest child pursuant to Tenn. Code Ann. § 36-1-113(g)(6). However, she asserts that the trial court erred by terminating her parental rights with regard to the three remaining children because the Department had failed to present clear and convincing evidence that she had abandoned her children in accordance with Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(iv). We find no merit in this argument.

A parent's abandonment of his or her child provides grounds for terminating his or her parental rights. The most common basis for finding abandonment is a parent's willful failure to support or to visit his or her child. Tenn. Code Ann. § 36-1-113(1)(A)(i). However, in cases where the parent is incarcerated when the termination petition is filed, abandonment may also be made out by introducing evidence that "the parent . . . has engaged in conduct prior to incarceration which exhibits a wanton disregard for the welfare of the child." Tenn. Code Ann. § 36-1-113(1)(A)(iv). Although "wanton disregard" has not been specifically defined, this court has found that parents manifest wanton disregard when they (1) engage in repeated criminal activity, *State Dep't of Children's Servs. v. F. E. B.*, No. E2001-00942-COA-R3-JV, 2003 WL 296185, at *3 (Tenn. Ct. App. Feb. 12,  2003) (No Tenn. R. App. P. 11 application filed); (2) abuse drugs, *State Dep't of Children's Services v. Wiley*, No. E1999-01216-COA-R3-CV, 1999 WL 1068726, at *7 (Tenn. Ct. App. Nov. 24, 1999), *perm. app. denied* (Tenn. Apr. 24, 2000); and (3) leave children unsupervised without food or necessities, *In re C.W.W.*, 37 S.W.3d at 475.

---

[9]These decisions draw a distinction between specific facts and the combined weight of these facts. Tenn. R. App. P. 13(d) requires us to defer to the trial court's specific findings of fact as long as they are supported by a preponderance of the evidence. However, we are the ones who must then determine whether the combined weight of these facts provides clear and convincing evidence supporting the trial court's ultimate factual conclusion. The Tennessee Supreme Court used this approach in *In re Valentine* when it recognized the difference between the conclusion that a biological parent had not complied substantially with her obligations in a permanency plan and the facts relied upon by the trial court to support this conclusion. *In re Valentine*, 79 S.W.3d at 548-49; *see also Jones v. Garrett*, 92 S.W.3d at 838-39.

In forming its conclusion that R.M. had shown a wanton disregard for the welfare of her children, the trial court considered the Department's evidence of R.M.'s habitual physical abuse of her children, the children's repeated stints in foster care in three different states, the danger R.M. exposed the children to when she was evading arrest, and R.M.'s continued psychological abuse of her children. R.M.'s response is to trivialize the evidence of abuse by characterizing it as appropriate corporal punishment and by blaming her predicament on W.M.'s relatives.

R.M.'s characterization of her conduct as legitimate discipline does little to change the nature of the horrible abuse she inflicted upon her children. The impact of the children's testimony regarding their mother's actions cannot be undermined by R.M.'s self-serving assertions that her actions did not amount to abuse. Abuse it surely was, and no reasonable person reviewing this record could reach any conclusion other than the fact that R.M. abused her children, both physically and psychologically, up until the time she was arrested in Vermont. In fact, R.M. continued to be psychologically abusive to her children after she was incarcerated.[10]

The only conclusion that can be reasonably drawn from this record is that for years R.M.'s conduct has manifested wanton disregard for her children's welfare. This conduct includes the physical beatings she inflicted on the children,[11] the psychological abuse, and the danger she exposed the children to in Venezuela when she was fleeing from the authorities. Based on the chilling evidence presented at trial, we have little difficulty agreeing with the trial court's conclusion that the Department presented clear and convincing evidence that R.M. abandoned her three children.

## IV.
### THE CHILDREN'S BEST INTERESTS

R.M. also asserted that even if the Department has proved grounds for termination under Tenn. Code Ann. § 36-1-113(g), the Department failed to present clear and convincing evidence that terminating her parental rights is in her children's best interests as required by Tenn. Code Ann. § 36-1-113(c)(2). We disagree. The children involved in this case will clearly be better off once R.M.'s parental rights are terminated.

---

[10] In various letters from prison, R.M. called one of her daughters "ugly" and accused her of being a "liar." She also made veiled threats about what she intended to do following her release from prison. In one letter she wrote:

> I am planning and is currently looking into a Christian girl school, where you will live there, eat there until I get out, then I will deal with you. At the rate you are going, your reputation will stink so badly in that school, you will feel like dying. . . .

> If you feel that I am in jail and can't do anything you are dead wrong. I can do more in here than I can on the outside.

[11] The Department is not seeking to terminate R.M.'s parental rights under Tenn. Code Ann. § 36-1-113(g)(4). Therefore, it is not required to prove that these beatings amounted to severe child abuse.

The factors to be considered during the individualized "best interests" decision-making are included in Tenn. Code Ann. § 36-1-113(i). As we have stated, "[t]he listed factors are not exhaustive. The statute does not require every factor to appear before a court can find that termination is in a child's best interest." *State of Tenn. Dep't of Children's Servs. v. T.S.W.*, No. M2001-01735-COA-R3-CV, 2002 WL 970434, at *3 (Tenn. Ct. App. May 10, 2002) (No Tenn. R. App. P. 11 application filed). When the interests of the child and the parents diverge, the best interests of the child will always prevail. Tenn. Code Ann. § 36-1-101(d) (2001).

R.M. is currently incarcerated. Despite numerous parenting classes, parenting plans, and repeated interventions in three states, she continued to abuse her children physically and psychologically. She has not seen her children in six years, and those of her children who testified in this case requested that her parental rights be terminated. In the face of this evidence, R.M. states that she has taken several self-help parenting classes in prison and that she has attempted to maintain a parental relationship with her children through correspondence. The threatening tenor of her letters, however, like the one we quoted earlier, demonstrate that R.M. has not successfully addressed her abusive relationship with her children.

We have no difficulty agreeing with the trial court's findings with respect to the factors in Tenn. Code Ann. § 36-1-113(i). The record demonstrates clearly and convincingly that the children's interests would be best served by terminating R.M.'s parental rights. Therefore, the court did not err when it terminated her parental rights to her four children.

## V.

We affirm the trial court's December 9, 2004 judgment terminating R.M.'s parental rights with regard to her four children with W.M. and remand this case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to the Tennessee Department of Children's Services.

_____
WILLIAM C. KOCH, JR., P.J., M.S.